## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 12 2017, 8:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Dennis F. Cantrell
Cantrell, Strenski & Mehringer, LLP
Indianapolis, Indiana

Jeffrey A. Siderius
Cray Huber Horstman Heil &
VanAusdal, LLC
Chicago, Illinois

ATTORNEY FOR APPELLEES
GATEWAY ARTHUR, INC. AND
EMMES REALTY SERVICES, LLC

Ginny L. Peterson
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Argonaut Midwest Insurance Company,

*Appellant-Plaintiff,*

v.

DLC Services, Inc., DLC Landscape & Snow Removal, Inc., Gateway Arthur, Inc., Emmes Realty Services, LLC, Jane Jones and Gary Jones,

*Appellees-Defendants,*

December 12, 2017

Court of Appeals Case No. 45A03-1706-PL-1172

Appeal from the Lake Superior Court

The Honorable Calvin D. Hawkins, Judge

Trial Court Cause No. 45D11-1608-PL-85, *Consolidated with* 45D02-1507-CT-125

Jane Jones and Gary Jones,

*Plaintiffs,*

v.

Wiseway Super Food Center,
Inc., Gateway Arthur, Inc.,
Emmes Realty Services, LLC,
and DLC Landscape & Snow
Removal, Inc.,

*Defendants.[1]*

**Bradford, Judge.**

# Case Summary

At all times relevant to the underlying matter, Appellant Argonaut Midwest Insurance Company ("Argonaut") provided insurance coverage for DLC Services, Inc. On July 28, 2015, Appellees Jane and Gary Jones filed suit against a number of parties, including DLC Landscape and Snow Removal, Inc. ("DLC Landscape"), alleging that Jane was injured when she slipped and fell on a patch of ice outside of a grocery store in February of 2014. Argonaut first learned of Jane's fall on February 1, 2016, when the insurance company

---

[1] For the sake of clarity, we note that this second caption refers to Cause Number 45D02-1507-CT-125 which was consolidated with Cause Number 45D11-1608-PL-85, the case at issue in the instant appeal.

representing two of the parties sued by Jane and Gary contacted Argonaut and demanded a defense.

[2] On August 17, 2016, Argonaut filed a declaratory judgment action seeking a ruling as to whether DLC Landscape was an insured under DLC Services's insurance policy. Argonaut filed a motion for summary judgment on the issue of coverage. This interlocutory appeal follows the trial court's denial of Argonaut's motion for summary judgment. Because we conclude that Argonaut was entitled to summary judgment on the question of coverage, we reverse the trial court's order and remand to the trial court with instructions for the trial court to enter summary judgment in favor of Argonaut.

# Facts and Procedural History

[3] The facts, as alleged before the trial court, provide as follows: Jane was injured on February 15, 2014, when she slipped and fell on a patch of ice in a grocery store parking lot. Thereafter, on July 28, 2015, Jane and Gary initiated a lawsuit ("the Jones lawsuit") against Appellees Wiseway Super Food Center, Inc. ("Wiseway"); Gateway Arthur, Inc.; Emmes Realty Services, LLC ("Emmes"); and DLC Landscape (collectively "the Jones lawsuit Defendants"), alleging that as a result of her fall on February 15, 2014, Jane suffered injuries which were caused by their negligence. Jane and Gary further alleged that Wiseway owns and operates the grocery store in question, Gateway Arthur owns the shopping center where the grocery store is located, Emmes is the management company for the shopping center where the grocery store is

located, and DLC Landscape is the snow removal company responsible for clearing the shopping center's parking lot.

[4] Again, at all times relevant to the underlying matter, Argonaut provided insurance coverage for DLC Services. Argonaut first learned of Jane's fall, her alleged injuries, and the Jones lawsuit on February 1, 2016, when representatives of Liberty Mutual Insurance Company, which represented both Gateway Arthur and Emmes, contacted Argonaut and demanded a defense. After being informed of the Jones lawsuit, Argonaut initiated a declaratory judgment action against DLC Services. In this action, Argonaut sought a ruling as to whether DLC Landscape was an insured under DLC Services's insurance policy. On November 17, 2016, the trial court consolidated Argonaut's declaratory judgment action and the Jones lawsuit.

[5] Argonaut subsequently filed a motion for summary judgment, arguing that no genuine issue of material fact remains as to the issue of coverage because (1) the parties to the Jones lawsuit are not insureds under DLC Services's insurance policy and (2) DLC Services did not comply with the policy's notice and cooperation provisions. Following briefing and arguments by the parties, the trial court denied Argonaut's motion for summary judgment and certified its order for interlocutory appeal. On June 30, 2017, we accepted jurisdiction over the case and this interlocutory appeal follows.

# Discussion and Decision

Argonaut contends that the trial court erred in denying its motion for summary judgment. In raising this contention, Argonaut claims that it was entitled to summary judgment for the following reasons: (1) DLC Services failed to provide it with timely notice of the alleged occurrence, (2) DLC Services failed to cooperate with the investigation into the alleged occurrence, and (3) DCL Landscaping & Snow Removal, Gateway Arthur, and Emmes are not insureds under the insurance contract at issue.

# I. Summary Judgment Standard of Review

The purpose of summary judgment under Indiana Trial Rule 56 is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bushong v. Williamson*, 790 N.E.2d 467, 474 (Ind. 2003). On appeal, our standard of review is the same as that of the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Williams v. Riverside Cmty. Corr. Corp.*, 846 N.E.2d 738, 743 (Ind. Ct. App. 2006), *trans. denied*. A fact is "material" if its resolution would affect the outcome of the case, and an issue is "genuine" if a trier of fact is required to resolve the parties' differing accounts of the truth or if the undisputed material facts support conflicting reasonable inferences. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). We construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party. *Riverside*, 846 N.E.2d at 743.

*Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1266 (Ind. Ct. App. 2009), *trans. denied*. Upon review, "[w]e will affirm an award of summary judgment on any theory supported by the record." *Haegert v. Univ. of*

*Evansville*, 977 N.E.2d 924, 937 (Ind. 2012) (citing *Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 790 (Ind. 2012)).

## II.  Law Relating to the Review of Insurance Contracts

[8]  Insurance contracts are governed by the same rules of construction as other contracts, and the proper interpretation of an insurance policy, even if it is ambiguous, is generally a question of law appropriate for summary judgment. *Ind. Farmers*, 917 N.E.2d at 1266 (citing *Liberty Ins. Corp. v. Ferguson Steel Co., Inc.*, 812 N.E.2d 228, 230 (Ind. Ct. App. 2004)).

> If the policy language is clear and unambiguous it should be given its plain and ordinary meaning. *Eli Lilly Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). An ambiguity does not exist simply because a controversy exists between the parties, each favoring an interpretation contrary to the other. *Linder v. Ticor Title Ins. Co. of Cal., Inc.*, 647 N.E.2d 37, 39 (Ind. Ct. App. 1995). Under Indiana law, an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language. *Id.* If the terms of a written contract are ambiguous, it is the responsibility of the trier of fact to ascertain the facts necessary to construe the contract. *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind. Ct. App. 2006). Where there is ambiguity, insurance policies are to be construed strictly against the insurer. *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996), *reh'g denied*.

*Id*. at 1266-67.

# III. Analysis

## A. Reasonable Notice of an "Occurrence"

[9]     The Argonaut policy at issue contained specific provisions regarding the insured's duty to promptly notify Argonaut after a loss. Specifically, with regard to notice, the policy provided as follows:

> **2. Duties In The Event Of Accident, Claim, Suit Or Loss**
> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
> a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
>> (1) How, when and where the "accident" or "loss" occurred;
>> (2) The "insured's" name and address; and
>> (3) To the extent possible, the names and addresses of any injured persons and witnesses.
> b. Additionally, you and any other involved "insured" must:
>> (1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.
>> (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".
>> (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".
>> (4) Authorize us to obtain medical records or other pertinent information.
>> (5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.
>
> ****

**3. Legal Action Against Us**

No one may bring a legal action against us under this coverage form until:

a. There has been full compliance with all the terms of this coverage form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

Appellant's App. Vol. II, p. 29.

[10] "We have held that the notice requirement is 'material, and of the essence of the contract.'" *Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co.*, 721 N.E.2d 270, 277 (Ind. Ct. App. 1999) (quoting *London Guar. & Accident Co. v. Siwy*, 35 Ind. App. 340, 345, 66 N.E. 481, 482 (1903)).

> The duty to notify an insurance company of potential liability is a condition precedent to the company's liability to its insured. *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 507 (Ind. Ct. App. 1993), *trans. denied*. When the facts of the case are not in dispute, what constitutes reasonable notice is a question of law for the court to decide. *Id.*

*Id.*

[11] "Unlike other policy provisions requiring the cooperation of the insured, noncompliance with notice of claim provisions resulting in an unreasonable delay triggers a presumption of prejudice to the insurer's ability to prepare an adequate defense." *Id.* (citing *Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind. 1984)).

In holding that a failure to give timely notice triggers a presumption of prejudice, the Indiana Supreme Court explained as follows:

> The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss. This adequate investigation is often frustrated by a delayed notice. Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit.

*Miller*, 463 N.E.2d at 265.

[12] "The presumption of prejudice means that if the delay in giving the required notice is unreasonable, the burden falls on the insured to produce evidence that prejudice did not actually occur in the particular situation." *Ind. Farmers*, 917 N.E.2d at 1274 (citing *Erie Ins. Exch. v. Stephenson*, 674 N.E.2d 607, 612 (Ind. Ct. App. 1996)). Thus, in a summary judgement action, it is incumbent upon the alleged-insured to set forth "some evidence" to rebut the presumption that the insurer has "suffered prejudice of its right to conduct a timely and adequate investigation." *Erie Ins. Exch.*, 674 N.E.2d at 612. Once the alleged-insured does so, "the burden shifts back to the insurer to establish prejudice." *Ind. Farmers*, 917 N.E.2d at 1274.

### 1. *Unreasonable Delay*

[13] Our first task to determine whether the notice of the incident and the Jones lawsuit received by Argonaut was unreasonably delayed. Jane was allegedly

injured on February 15, 2014, when she slipped and fell on a patch of ice in the parking lot of a shopping center operated by Gateway Arthur and Emmes. Subsequently, Jane and Gary filed the Jones lawsuit on July 28, 2015. Argonaut's insured, DLC Services, never notified Argonaut of either Jane's fall or the Jones lawsuit. In fact, Argonaut was not notified of either Jane's fall or of the Jones lawsuit until February 1, 2016, when representatives of Gateway Arthur's and Emmes's insurance company notified Argonaut. Stated differently, Argonaut was not notified of Jane's fall and alleged injuries for nearly two years after the fall occurred and nearly six months after the Jones lawsuit was filed. These delays in providing notice of Jane's fall and alleged injuries to Argonaut are unreasonable as a matter of law. *See generally, Miller*, 463 N.E.2d at 266 (ordering that summary judgment be entered in favor of an insurance company after the insured failed to give the insurer notice of the accident giving rise to liability six months after the occurrence and ten days after the lawsuit was filed); *Askren Hub*, 721 N.E.2d at 278 (providing that a delay of six months before notifying the insurer of an "occurrence" constitutes unreasonable notice). Because we conclude that Argonaut did not receive timely notice of Jane's fall and alleged injuries, we must next consider whether Argonaut was prejudiced by the unreasonable delay.

## 2. Prejudice

[14] The next question is whether Argonaut suffered prejudice as a result of the delay. Consistent with the above-discussed authority, we presume that Argonaut suffered prejudice from the delayed notice unless and until Gateway

Arthur and Emmes come forward with evidence to rebut this presumption. *See Miller*, 463 N.E.2d at 265; *Ind. Farmers*, 917 N.E.2d at 1274. As to notice, Gateway Arthur and Emmes argued during summary judgment proceedings that "investigation of [Jane's] claim by the other insurers and defendants in the case has thus far more than adequately protected any separate interests Argonaut had; all relevant evidence has been preserved to the extent possible, and the depositions in this case remain to be taken." Appellant's App. Vol. II, p. 204. Gateway Arthur and Emmes, however, did not designate any evidence to support these arguments. In addition, Gateway Arthur and Emmes did not designate any other evidence to rebut the presumption of prejudice.

[15] In addition, assuming that other entities had the opportunity to complete an investigation into Jane's claims soon, if not immediately, after the date of Jane's fall, Argonaut was not given the opportunity to do so because it was not timely notified of the incident. The lack of timely notice resulted in a presumption of prejudice which Gateway Arthur and Emmes failed to adequately rebut. We therefore conclude that no issue of material fact remains and summary judgment should have been granted in Argonaut's favor because none of the claimed insureds complied with the notice provisions contained within the insurance policy in question.[2] Accordingly, we reverse the judgment of the trial

---

[2] Because we decide that Argonaut was entitled to summary judgment on the question of coverage because of a failure to provide timely notice of the "occurrence" and the Jones lawsuit, we need not consider whether coverage existed on any of the other theories argued by the parties.

court and remand to the trial court with instructions to enter summary judgment in favor of Argonaut on the question of coverage.

[16] The judgment of the trial court is reversed and the matter remanded with instructions.

May, J., and Barnes, J., concur.