Kermalynn FRANZ, individually, and as the parent, natural guardian, and next friend of Glenn Charles Taylor, a minor, and Liberty Baptist Church, a/k/a Liberty Baptist Church and School a/k/a Liberty Baptist Church of Glen Park, Inc., Appellants–Defendants,

v.

STATE FARM FIRE & CASUALTY COMPANY, Appellee–Plaintiff.

No. 45A03–0102–CV–39.

Court of Appeals of Indiana.

Aug. 27, 2001.

Mitchell A. Peters, Gouveia & Miller, Merrillville, IN, Robert P. Harper, Harper & Rogers, Valparaiso, IN, Attorneys for Appellant Kermalynn Franz.

Robert F. Parker, Beckman, Kelly & Smith, Hammond, IN, Bryan Truitt, Tsoutsouris & Bertig, Valparaiso, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Kermalynn Franz, individually, and as the next friend of Gene Charles Taylor, appeals the trial court's summary judgment in favor of appellee-plaintiff State Farm Fire & Casualty Company. Specifically, Franz contends that Taylor's injuries fall outside an exclusion, as set forth in a comprehensive liability policy, for injuries caused by use or operation of a vehicle.

### FACTS

The facts most favorable to Franz are that on October 19, 1997, Liberty Baptist Church of Glen Park, Inc., (Liberty Baptist) sponsored a recreational "bus pull." The "bus pull" involved a contest between four teams, each made up of children and adults, to propel a bus across the finish line first. On each team, some members pushed the bus from behind while others pulled the bus with ropes tied to the front. Taylor, then thirteen years old, was one of the children pulling the rope for his team's bus. During the course of the race, Taylor slipped and the driver's side front wheel of the bus rolled over him, causing him severe and permanent injuries.

William Cronk, a regular bus driver for Liberty Baptist, was sitting in the driver's seat of the bus involved in the accident. As instructed before the race began, he left the bus in neutral. Though Cronk saw Taylor fall, he was unable to apply the brakes in time to avoid the accident. While the engines of the buses taking part in the race were not running at the time, the buses are regularly used to transport passengers to Liberty Baptist's school and church activities.

Franz brought a negligence action against Liberty Baptist, which suit is still pending. State Farm brought a declaratory action, asking the trial court to determine that State Farm had no obligation to defend Liberty Baptist or indemnify it in the event of an adverse judgment. State Farm argued that the policy's auto-use exclusion negated coverage of Taylor's injuries. After receiving Franz's and Liberty Baptist's separate answers, State Farm moved for summary judgment. The trial court granted State Farm's summary judgment and Franz [1] now appeals.

### DISCUSSION AND DECISION

#### I. Standard of Review

A grant of summary judgment requires that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. T.R. 56(C). On appeal from summary judgment, the reviewing court faces the same issues that were before the trial court and analyzes them in the same way. *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 855 (Ind.1999). We view the pleadings, depositions, answers to interrogatories, and affidavits in the light most favorable to the nonmoving party. *Id.* Where the case turns on a written document, the court must find that the document's provisions are unambiguous. *B & R Farm Servs., Inc. v. Farm Bureau Mut. Ins. Co.,* 483 N.E.2d 1076, 1077 (Ind.1985). Where terms are unambiguous they should be given their plain and ordinary meaning. *Meridian Mut. Ins. Co. v. Auto–Owners Ins. Co.,* 698 N.E.2d 770, 773 (Ind.1998).

---

1. Liberty Baptist filed an appearance in this appeal but did not file a brief or adopt Franz's brief.

Failure to define a term in an insurance policy does not necessarily make it ambiguous. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). Although the nonmovant has the burden of demonstrating the grant of summary judgment was erroneous, we carefully assess the trial court's decision [2] to ensure that the nonmovant was not improperly denied his day in court. *B & R Farm,* 483 N.E.2d at 1077.

## II. Exclusion for Auto Use

■ The sole issue for our consideration is whether State Farm's insurance policy [3] excludes coverage for Taylor's accident and injuries under an auto-use exception. State Farm issued Liberty Baptist a comprehensive liability policy with the following exclusion:

> [T]his insurance policy does not apply:
>
> . . . .
>
> to **bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and **loading or unloading.**

Supplemental Record at 268–268A (emphases in original). The policy defines "auto" as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment." Supp. R. at 273A. Franz does

not dispute that the bus is a land motor vehicle as defined by the policy.

Franz's main contention is that the bus was not in "use" during the bus pull and, therefore, Taylor's injuries should not be excluded from coverage. Franz distinguishes between use *of* a vehicle and use *as* a vehicle, arguing that, while the participants were using the bus, they were not using it as a bus. In a case involving insurance coverage *for* accidents arising out of the use of an automobile, our supreme court held that an employee's injuries in delivering a water softener did not arise out of the use of the truck. *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.,* 260 Ind. 32, 291 N.E.2d 897, 898 (1973). The employee was "transporting the softener down the basement stairs" when the stairs collapsed. *Id.* The *Lumbermens* court explained, "Since the efficient and predominating cause of the accident did not arise from the use of the truck, there can be no recovery based on the user clause" of the insurance policy. *Id.* at 899. This court, construing "use" in a policy excluding loss caused by one employed in the "automobile business," determined that "use" was synonymous with "drive" or "operate." *Am. Family Mut. Ins. Co. v. Nat'l Ins. Ass'n,* 577 N.E.2d 969, 971–72 (Ind.Ct.App.1991) (finding that the intent of the policy "was to exclude coverage of risks occurring while a vehicle

---

2. Here, the trial court entered findings of fact in granting summary judgment. This does not alter our review, nor are we bound by the trial court's specific findings of fact. *See Dible v. City of Lafayette,* 713 N.E.2d 269, 275 n. 2 (Ind.1999). They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.* Thus, we employ our usual standard of review for cases disposed of by summary judgment. *Id.*

3. The insurance policy, as it was designated to the trial court, contains some pages with material on each side. The trial court clerk overlooked this fact while copying the pages for inclusion in the Clerk's Record. After discovering the error, State Farm obtained an order from the trial court to correct the Clerk's Record on appeal. Upon filing their appellate brief with this court, State Farm requested leave to correct the Clerk's Record on appeal pursuant to Ind.Appellate Rule 32(A) (2001). We granted State Farm's request in an order dated June 28, 2001. As a consequence, we designate the formerly missing pages as part of the supplemental record and will cite them as such.

is being driven or used as a means of transportation").

Franz claims that the bus was not in use during the bus pull and analogizes the facts here to other Indiana cases finding non-use. *See Allstate Ins. Co. v. Cincinnati Ins.*, 670 N.E.2d 119, 122 (Ind.Ct.App. 1996) (holding that vehicle was not in use "when it was unoccupied, on a lift, and undergoing repairs for a fee"); *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 506 (Ind.Ct.App.1993) (holding that unoccupied truck parked on the side of the street was not in use when plaintiff was pulled off the hood of the truck and thrown onto the ground). In Franz's view, the bus "was acting as a large-scale version of a child's pull toy." Appellant's brief at 14. No one would argue, Franz continues, "that because a painted wooden duck had wheels, was being drawn across the floor by a string and could be stopped by the force of one's foot, that it was being employed as a 'vehicle.'" Appellant's brief at 14. State Farm counters that the bus was being used as a vehicle because its "essential characteristics ... made it suitable for this use." Appellee's brief at 13.

> It rolled on wheels. It could be steered. It could be braked. It was clearly more than just a heavy weight. Imagine the participants in this contest trying to pull a bus across the finish line if the bus did not have wheels, but sat with its undercarriage resting on the pavement.

Appellee's brief at 13.

We agree with State Farm and conclude that the negligent operation of the bus caused Taylor's injuries. The bus is designed to be braked and steered, and for these reasons Liberty Baptist used the bus for the contest. These characteristics are essential to drive or operate a vehicle. See *Am. Family*, 577 N.E.2d at 971. But for the driver's failure to steer the bus or apply the brakes in time to avoid the accident, Taylor would not have suffered injury. In other words, the use of the bus was the "efficient and predominating cause" of Taylor's injuries. *See Lumbermens*, 291 N.E.2d at 898. As a result, the use of the bus in the "bus pull" fits within State Farm's policy exclusion for use or operation of an auto or motor vehicle. This leads us to conclude that the trial court properly determined that Taylor may not recover under State Farm's insurance policy.

Judgment affirmed.

FRIEDLANDER, J., and ROBB, J., concur.